458 So.2d 933 (1984)
Mrs. Ophelia E. GUIDRY, Individually and as Tutrix of Her Minor Child, Bonita Fay Guidry and Tyrone McDonald Guidry and Valerie Renese Guidry
v.
Mrs. Faye Hart Fugler Bowers, the Wife of Robert BOWERS, Individually, and as Tutrix of Her Minor Child, Steven Fugler, et al.
No. 83 CA 0935.
Court of Appeal of Louisiana, First Circuit.
July 5, 1984.
Rehearing Granted August 24, 1984.
Warren D. Ponder, Baton Rouge, for plaintiff-appellant Ophelia E. Guidry, Etc.
Steve Le Blanc, Baton Rouge, for defendant-appellee Mrs. Faye Hart F. Bowers, Etc.
Kenneth E. Barnette, Baton Rouge, for defendant-appellee Prudential Property and Casualty Ins. Co.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
This is an appeal from a decision of the trial court holding that there existed no valid, enforceable compromise agreement between plaintiff and defendant. Plaintiff appealed.

FACTS
On May 13, 1979, Steven Fugler, minor son of defendant, Faye Hart Fugler Bowers (Mrs. Bowers), lost control of his mother's car and hit McKinley Guidry. Guidry was riding a bicycle and had stopped at the intersection when he was hit and seriously *934 injured. He died nine days later. He was survived by his wife, Ophelia Guidry, and three children, Tyrone, Valerie and Bonita Guidry. At the time of his death, Valerie and Bonita Guidry were minors.
Steven Fugler's negligence was never at issue and his mother's liability insurer, Prudential Property and Casualty Insurance Company (Prudential), indicated from the outset that it was willing to pay the $10,000 limits of its policy to the Guidrys.
Defendant subsequently made an oral offer, sometime prior to September, 1979, to personally pay an additional $10,000 to the Guidrys to settle the cause of action by way of compromise. Mrs. Guidry accepted this oral offer. By letter, dated September 14, 1979, Mrs. Guidry through her attorney stated that she would accept in settlement of the claim on behalf of herself and her minor daughters, a $5000 cash payment from Mrs. Bowers along with a promissory note executed by Mrs. Bowers for $5000 payable at the rate of $50 per month, at an annual interest rate of 8%. A letter was also written at this time by Mrs. Guidry's attorney to Tyrone Guidry, the major son, seeking to have Tyrone execute a release of the claim based on the $10,000 compromise. There is nothing in the record to indicate that he ever did this.
On October 26, 1979, defendant executed a "collateral mortgage" on her home together with a "collateral mortgage note" as security for her agreement to pay plaintiff $10,000. She attempted to borrow $10,000 to settle the claim, but was never able to secure financing and therefore never issued a hand note in connection with the mortgage.
In order to avoid prescription, a wrongful death suit was filed on May 13, 1980, by Mrs. Guidry, individually and as tutrix of her minor child, Bonita Faye Guidry, and by her major children, Tyrone Guidry and Valerie Guidry,[1] asking for $297,746.46 from the defendant. The compromise was not mentioned. Defendant, through her attorney, Joseph Gladney, then sent Mrs. Guidry the following letter dated May 27, 1980, which reduced the terms of the compromise to writing and which Mrs. Guidry signed:
Dear Mr. Gladney:
Please be advised that as of this date I have been unable to secure a loan in order to pay the $10,000.00 owed as a result of this accident. As soon as the interest rates go down sufficiently for me to do so, I will borrow the necessary funds to pay this obligation in its entirety. Thank you kindly for bearing with me. I can assure you that I will not unnecessarily delay the completion of our settlement agreement.
 Sincerely yours,
 t/Faye Hart Fugler Bowers
 sgd: Faye Hart Fugler Bowers
June 6, 1980
Accepted:
I, Mrs. Ophelia Guidry, ind. and as tutrix of my minor children, Valerie Renese Guidry and Bonita Faye Guidry, accept, approve and ratify our previous agreement whereby you agreed to pay me and my children $10,000.00 in addition to the $10,000.00 which Prudential Property and Casualty Insurance Company has offered to pay me and the children due to the negligence of your son, Steven Fugler. I also acknowledge receipt of the mortgage note executed by you, Faye Hart Fugler Bowers, in the principal sum of $10,000.00, dated October 26, 1979, plus interest at 12% per annum from date, until paid. I agree to give you a reasonable time to borrow the necessary funds to pay the mortgage note, which should be within two years. Note received as pledge to secure obligation.
 sgd: Ophelia Guidry and
 Tyrone M. Guidry
 t/ Ophelia Guidry,
 Individually and as tutrix
*935 On June 17, 1980, defendant was sent a letter authorized by Mrs. Guidry, informing defendant that Mrs. Guidry would herself accept the mortgage note.
On February 4, 1981, Mrs. Guidry's attorney wrote to defendant's attorney, threatening to have the compromise agreement declared null and cancelled because of defendant's inability to pay the $10,000.
On February 8, 1981, Mrs. Guidry sent her attorney the following letter:
Dear Mr. Gladney:
I read the letter you sent to Mr. Bert Garraway on February 4, 1981 concerning annulling and cancelling my agreement with Mrs. Faye Bowers to accept $10,000 from her. After thinking it over, I have decided that I do not want to cancel my agreement with Mrs. Bowers. I feel that this amount will be the most that she will be able to pay.
I know that this is a small amount and will never replace the lost [sic] of my husband, but I will stand by the agreement that I made with Mrs. Bowers to accept the $10,000 from her and the $10,000 from her insurer, Prudential Insurance.
 Yours truly,
 sgd: Ophelia E. Guidry
 t/(Mrs.) Ophelia E. Guidry
Pretrial conference was finally held on March 22, 1982, and trial was set for August 23, 1982. In May of 1982, defendant filed for bankruptcy. In August, 1982, plaintiffs filed an amended petition seeking $300,000 in damages, plus the $10,000 secured by the mortgage, and seeking to be treated as a secured creditor to the extent of the $10,000 collateral mortgage.
The case was actually tried on June 30, 1983. After settlement in open court with Prudential and stipulation that there would be no liability on the part of Mrs. Bowers over and above the amount of any compromise agreement found valid by the court, the issues remaining before the court were the validity of the compromise agreement and the enforceability of the mortgage executed by defendant, Mrs. Bowers, on October 26, 1979. After trial on the merits, the trial judge rendered judgment in favor of defendant and against the plaintiff, holding that the parties had never reached an enforceable compromise settlement and finding the collateral mortgage to be unenforceable.
From that judgment, plaintiffs appeal. The only two issues on appeal are:
1. Whether a valid, enforceable compromise agreement existed, and if so,
2. Whether the mortgage executed as security is enforceable.

THE COMPROMISE AGREEMENT
Ln. C.C. art. 3071 reads as follows:

A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agreed on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
Ordinarily, the agreement reduced to writing by Mrs. Bowers' letter dated May 27, 1980, and signed by Mrs. Guidry and Tyrone M. Guidry on June 6, 1980, would be an enforceable compromise under La.C.C. art. 3071. However, in this case, Mrs. Guidry attempted to compromise the claim on behalf of her minor child, Bonita Guidry, as well as herself.[2] The Louisiana Code of Civil Procedure carefully details the manner in which the claims of a minor *936 may be compromised and settled. Essential to the validity of that settlement is specific court approval. La.C.C.P. arts. 4265, 4271; Johnson v. Ford Motor Company, 707 F.2d 189 (5th Cir.1983).
La.C.C.P. art. 4265 sets out the requirement of judicial approval as follows:
With the approval of the court as provided in Article 4271, a tutor may compromise an action or right of action by or against the minor, or extend, renew, or in any manner modify the terms of an obligation owed by or to the minor.
La.C.C.P. art. 4271 specifies the contents of the petition and the manner in which the matter is to be presented to the court for decision.[3]
Compromises entered into absent these protections have no legal effect. Johnson, 707 F.2d at 194.
While Mrs. Guidry alleges in her petition that she has qualified as tutrix of Bonita Guidry by letters of tutorship issued October 16, 1979, there is no evidence of this in the record. More importantly, there is no evidence, whatsoever, in the record that Mrs. Guidry at any time obtained specific approval from a court to compromise Bonita Guidry's claim for any amount. Obviously then, the "compromise agreement" alleged in this case has no legal effect regarding the claim of the minor, Bonita Guidry.
Not only did the compromise have no effect on Bonita Guidry's claim, it also had no effect on her major child, Valerie Guidry, who was not a party to the agreement. La.C.C. art. 1780. The parties clearly contemplated that this "compromise agreement" would fully release the defendant from any further claims by each of the plaintiffs, Ophelia Guidry, Valerie Guidry,[4] Bonita Guidry and Tyrone Guidry. Since this was not accomplished, it is apparent that there was no "meeting of the minds", no consent and no valid compromise. La. C.C. arts. 1797, 1819, 1825.
We therefore affirm the holding of the trial court that there exists no enforceable compromise in this case.

THE MORTGAGE
At the time the mortgage was executed on October 26, 1979, there was no enforceable compromise agreement because the oral agreement had not been reduced to writing. La.C.C. art. 3071. While the subsequent letter dated May 27, 1980, by Mrs. Bowers and signed June 6, 1980, by Mrs. Guidry fulfilled the written requirement of La.C.C. art. 3071, it does not constitute an enforceable compromise due to lack of agreement as to what could be accomplished by the compromise and thus lack of consent on the part of both parties.
La.C.C. art. 3285 states:
Consequently, it is essentially necessary to the existence of a mortgage, that there shall be a principal debt to serve as a foundation for it.
Hence it happens, that in all cases where the principal debt is extinguished, the mortgage disappears with it.
Hence also it happens that, when the principal obligation is void, the mortgage is likewise so; this, however, is to be understood with certain restrictions which are established hereafter.
In this case we find no valid principal debt. At the time the mortgage was executed by Mrs. Guidry, both she and Mrs. Bowers intended it as security for the *937 $10,000 compromise. Since the compromise was void, it follows that the mortgage is void for lack of a principal debt.[5] La. C.C. art. 3285.
For the foregoing reasons, we affirm the judgment of the trial court. All costs are to be paid by the appellant.
AFFIRMED.

ON APPLICATION FOR REHEARING.
Rehearing GRANTED, and the case is remanded for a new trial. Based upon the record, the opinion rendered by this court is correct. However, it is apparent from the rehearing application that pertinent evidence was not presented at trial. We cannot consider this evidence on appeal. Therefore, in the interest of justice, we remand this matter for the introduction of the pertinent evidence and disposition in accordance with law.
NOTES
[1] Although both Valerie and Bonita Guidry were minors at the time of their father's death, by the time suit was filed, Valerie Guidry was a major, having reached 18 years of age on December 11, 1979.
[2] Mrs. Guidry also signed the agreement as tutrix of her minor child, Valerie Guidry. This was obviously an error, since her petition establishes that Valerie had reached majority by June 6, 1980. See Footnote 1.
[3] La.C.C.P. art. 4271 states:

The tutor shall file a petition setting forth the subject matter to be determined affecting the minor's interest, with his recommendations and the reasons therefor, and with a written concurrence by the undertutor. If the court approves the recommendations, it shall render a judgment of homologation. The court may require evidence prior to approving the recommendations.
If the undertutor fails to concur in the tutor's recommendations, the tutor shall proceed by contradictory motion against him. After such hearing and evidence as the court may require, the court shall decide the issues summarily and render judgment.
[4] See Footnote 2.
[5] In view of our finding that the mortgage is invalid for lack of an underlying principal debt, we find it unnecessary to classify the mortgage in this case as being either a collateral mortgage, future advances mortgage, or an ordinary mortgage. First Guaranty Bank v. Alford, 366 So.2d 1299 (La.1978). However, we do note that it clearly does not qualify as a collateral mortgage, despite its designation as such.

Three instruments are required for a valid collateral mortgage: a mortgage, a mortgage note (also called a "ne varietur" note) and a hand note. The hand note is the evidence of the indebtedness. In this case, no hand note was ever executed; therefore, the two instruments that were executed by the defendantthe document entitled "Collateral Mortgage" and the accompanying promissory note, both in the amount of $10,000do not fulfill the requirements for a collateral mortgage. Mingledorff v. American Bank and Trust Company in Monroe, 420 So.2d 463 (La.App. 2d Cir.1982), writ denied, 423 So.2d 1161 (1982).